```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
```

| | |
|---|---|
| OLEGNA FUSCHI,<br><br>    Appellant,<br><br>   -v-<br><br>THE BANK OF NEW YORK MELLON TRUST COMPANY, N.A.,<br><br>    Appellee. | 22-cv-332 (JSR)<br><br>OPINION AND ORDER |

JED S. RAKOFF, U.S.D.J.:

Pending before the court is Olegna Fuschi's appeal from the United States Bankruptcy Court for the Southern District of New York of the order dismissing her Chapter 11 bankruptcy case with prejudice. The bankruptcy court justified its dismissal of Ms. Fuschi's bankruptcy case on two grounds: (1) for cause under 11 U.S.C. § 1112(b), finding that she had filed the Chapter 11 petition in bad faith; and (2) because an earlier filed bankruptcy case involving the same creditor and the same assets was still pending in the United States Bankruptcy Court for the District of Connecticut at the time she initiated this proceeding. Ms. Fuschi, who represents herself on this appeal, has not identified any specific error in the judgment below. Nonetheless, this Court has carefully reviewed the bankruptcy court's decision and the underlying record, and, having done so, affirms the dismissal of Ms. Fuschi's case.

1

I.  **Background**

Olegna Fuschi is "an accomplished pianist with a world-renowned reputation." Decl. in Opp'n to Mot. to Dismiss at 3 ¶ 16, <u>In re Olegna Fuschi</u>, No. 21-11756 (Bankr. S.D.N.Y. Dec. 16, 2021), ECF No. 30-1; <u>see also</u> Opp'n to Mot. to Dismiss at 7 ¶ 24, <u>In re Olegna Fuschi</u>, No. 21-11756 (Bankr. S.D.N.Y. Dec. 16, 2021), ECF No. 30. Ms. Fuschi lived in a co-op in the Bronx for over forty years. ECF No. 8 at 3; ECF No. 9 at 2-3. On February 21, 2007, Ms. Fuschi obtained a loan for $540,000 from JPMorgan Chase Bank. <u>See</u> Mot. to Dismiss, Ex. A at 16, <u>In re Olegna Fuschi</u>, No. 21-11756 (Bankr. S.D.N.Y. Nov. 24, 2021), ECF No. 22 [hereinafter Mot. to Dismiss]. In return, she promised to make monthly payments, with interest, and pledged a security interest in her shares of capital stock in the co-op corporation and in the proprietary lease for her unit. <u>See</u> <u>id.</u> at 20. JPMorgan then recorded its security interest with the Office of the City Register. <u>See</u> <u>id.</u> at 30-32 (UCC-1 reflecting JPMorgan's secured interest).

In late 2008, Ms. Fuschi quit making monthly payments on the loan.[1] Some years later, JPMorgan transferred the promissory note

---

[1] The principal amount of the loan is agreed upon. <u>See</u> ECF No. 8 at 2; ECF No. 9 at 3. Ms. Fuschi does not contest BNY Mellon's assertion that the loan was due as of December 1, 2008, in the total amount of over $1.3 million. ECF No. 9 at 4; <u>see generally</u> ECF No. 8. But because the Court affirms the bankruptcy court below, the precise amount of unpaid interest owed by Ms. Fuschi is not important for purposes of this appeal.

and assigned its recorded security interest to The Bank of New York Mellon Trust Company, N.A. ("BNY Mellon"). See id. at 33-40 (UCC-3 reflecting assignment to The Bank of New York Mellon Trust Company, N.A.). Through its mortgage servicer, Select Portfolio Servicing, Inc. ("SPS"), BNY Mellon has attempted to sell Ms. Fuschi's co-op several times.[2] See ECF No. 8 at 2; ECF No. 9 at 4.

But no sale has occurred, in part because Ms. Fuschi has instituted four bankruptcy actions since her default. In 2009, Ms. Fuschi filed a Chapter 13 petition in the Southern District of New York that was dismissed that same year. Mot. to Dismiss, Ex. B at 45, 47-48. Several months later, Ms. Fuschi again filed in the Southern District of New York but proceeded under Chapter 11; that action was dismissed in 2013. See Mot. to Dismiss, Ex. C at 52-60.

Around five years later, in 2018, Ms. Fuschi filed another Chapter 11 petition, but in the District of Connecticut. See Chapter 11 Voluntary Pet., In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. Jan. 18, 2018), ECF No. 1. The bankruptcy court

---

[2] Ms. Fuschi insinuates that SPS is not the holder of the note and security agreement. See ECF No. 8 at 2 ("SPS … is purported to be the holder of a Note and Security Agreement … .") (emphasis added); see also id. (noting that "[i]t is alleged that SPS … has possession of the promissory note" but contending that "[n]o competent evidence was produced to support this claim"). To the contrary, the record clearly reflects that JPMorgan transferred the note and recorded security interest to BNY Mellon and that SPS is BNY Mellon's mortgage servicer. Ms. Fuschi does not cite any evidence to support her otherwise conclusory allegations.

entered a scheduling order governing the submission of Ms. Fuschi's required monthly operating reports and reorganization plan. See Order, In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. Nov. 8, 2018), ECF No. 75. The court granted two extensions, but Ms. Fuschi never submitted all required documents. See In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. 2019), ECF Nos. 80, 99-100, 118. In June 2019, one week after Ms. Fuschi failed to meet the court's second extension, the United States Trustee requested that the court convert the case from Chapter 11 to Chapter 7. See Decl., In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. June 11, 2019), ECF No. 106. The court granted the Trustee's motion, see Order, In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. Aug. 15, 2019), ECF No. 118 [hereinafter Chapter 7 Order], and later granted BNY Mellon's motion for relief from the automatic stay, see Ruling & Order, In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. Oct. 7, 2021), ECF Nos. 215-216.

On October 8, 2021 -- the day after the Connecticut court granted BNY Mellon relief from the automatic stay -- Ms. Fuschi filed another Chapter 11 petition, initiating the instant case in the Southern District of New York. Chapter 11 Voluntary Pet., In re Olegna Fuschi, No. 21-11756 (Bankr. S.D.N.Y. Oct. 8, 2021), ECF No. 1. In November 2021, SPS, as servicer for BNY Mellon, moved to dismiss, arguing that the petition had been filed in bad faith.

4

Mot. to Dismiss at 3-4 ¶ 3. Ms. Fuschi retained counsel, and in December 2021, the bankruptcy court held oral argument on the motion. Tr. of Dec. 21, 2021 Hr'g, In re Olegna Fuschi, No. 21-11756 (Bankr. S.D.N.Y. Feb. 1, 2022), ECF No. 48 [hereinafter Tr. of 12/21/2021 Hr'g]. At that time, the Chapter 7 proceeding in the District of Connecticut was still pending.[3] The court, after hearing argument from counsel for both parties (and also permitting Ms. Fuschi to speak), issued its ruling from the bench, dismissing Ms. Fuschi's petition with prejudice and barring her from refiling for a period of two years. See id. The court confirmed its decision in an order docketed the following day. Order, In re Olegna Fuschi, No. 21-11756 (Bankr. S.D.N.Y. Dec. 22, 2021), ECF No. 42.[4]

---

[3] The Connecticut court granted a discharge under 11 U.S.C. § 727 to Ms. Fuschi on December 7, 2021 -- two weeks in advance of the oral argument before the New York court -- but the case was not closed until May 20, 2022. See Order & Final Decree, In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. 2021, 2022), ECF Nos. 221, 225.

[4] Ms. Fuschi and her son, Anthony Mark Aibel, have also filed two adversary proceedings. In March 2018, Ms. Fuschi initiated an adversary proceeding against BNY Mellon, SPS, and JPMorgan. Compl., In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. Mar. 20, 2018), ECF No. 37. The bankruptcy court granted defendants' motion to dismiss in April 2019. Mem. of Decision on Mot. to Dismiss at 2, Fuschi-Aibel v. Bank of N.Y. Mellon, No. 18-05013 (Bankr. D. Conn. Apr. 12, 2019), ECF No. 35. Ms. Fuschi's son, Mr. Aibel, filed an adversary proceeding against BNY Mellon and SPS in June 2021. Compl., In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. June 21, 2021), ECF No. 196. Mr. Aibel requested a voluntary dismissal in response to the bankruptcy court's show-cause order. Order, Aibel v. Bank of N.Y. Mellon Trust Co., No. 21-05008 (Bankr. D. Conn. Apr. 18, 2022), ECF No. 20.

Through her retained counsel, Ms. Fuschi appealed the bankruptcy court's dismissal order to this Court. Notice of Appeal, In re Olegna Fuschi, No. 21-11756 (Bankr. S.D.N.Y. Jan. 4, 2022), ECF No. 44. However, Ms. Fuschi's counsel later submitted a letter to the Court explaining that he had "reviewed this matter and … [did] not believe there [was] a sufficient basis to prosecute this appeal." ECF No. 4. Accordingly, he "request[ed] that this appeal be withdrawn." Id. The Court so ordered his request. Id. Ms. Fuschi then appealed the Court's dismissal to the Second Circuit, "represent[ing] that her attorney sent the withdrawal letter without her knowledge or permission." ECF No. 7 at 3. She thus "ask[ed] for the restoration of her bankruptcy appeal." Id. The Second Circuit remanded and advised that "[t]he district court may, in an exercise of its discretion, permit Fuschi to reopen the case to present evidence and arguments to support her claim that the withdrawal was improper." Id. at 5.

After holding an evidentiary hearing, the Court reopened the case and set a briefing schedule for the merits of Ms. Fuschi's appeal from the bankruptcy court's dismissal. She filed an opening brief but never submitted a reply brief, even after the Court granted her a one-week extension. ECF No. 10.

**II. Legal Standard**

28 U.S.C. § 158(a)(1) confers jurisdiction on the Court "to hear appeals … from final judgments, orders, and decrees" of the

bankruptcy court. "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law de novo." In re Charter Commc'ns, Inc., 691 F.3d 476, 482-83 (2d Cir. 2012). The dismissal of a Chapter 11 petition for cause, however, is reviewed for abuse of discretion. In re Taylor, No. 97 Civ. 5967, 1997 WL 642559, at *1 (S.D.N.Y. Oct. 16, 1997); see also In re C-TC 9th Ave. P'ship, 113 F.3d 1304, 1312 (2d Cir. 1997); In re SGL Carbon Corp., 200 F.3d 154, 159 (3d Cir. 1999).

## III. Discussion

The bankruptcy court dismissed Ms. Fuschi's Chapter 11 case for two independent, but related, reasons. It identified "cause" for dismissal under 11 U.S.C. § 1112(b), concluding that Ms. Fuschi had filed the petition in bad faith. In further support of dismissal, the court observed that Ms. Fuschi's Chapter 7 case was still pending in the District of Connecticut and that both cases concerned the same asset, in violation of the so-called "single estate rule."

Ms. Fuschi's briefing does not expressly identify error in either ground of the bankruptcy court's decision below. But a pro se filing is granted "special solicitude" and interpreted "to raise the strongest claims that it suggests." Hardaway v. Hartford Pub. Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted). The Court is also mindful of this appeal's importance to

7

Ms. Fuschi; she has zealously litigated to retain possession of her home in the face of a climbing debt on the secured loan currently held by BNY Mellon. With these observations in mind, and in hopes of bringing finality to litigation that has stretched over a decade and involved courts across this circuit, the Court chooses to review both of the grounds supporting the bankruptcy court's decision.

Under 11 U.S.C. § 1112(b)(1), a bankruptcy court may, "on request of a party in interest," dismiss a Chapter 11 petition "for cause." Section 1112(b)(4) identifies specific circumstances that constitute "cause," but that list is "illustrative, not exhaustive." C-TC, 113 F.3d at 1311. This case involves one such unenumerated ground for "cause": a filing made in bad faith. See id. at 1310; see also SGL, 200 F.3d at 160-61 (collecting cases).

A petition is filed in bad faith "if it is clear that on the filing date there was no reasonable likelihood that the debtor intended to reorganize and no reasonable probability that it would eventually emerge from bankruptcy proceedings." In re Cohoes Indus. Terminal, Inc., 931 F.2d 222, 227 (2d Cir. 1991); see also C-TC, 113 F.3d at 1310. The Second Circuit has identified eight factors that a court should consider when assessing whether a petition was filed in bad faith:

> (1) the debtor has only one asset; (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors; (3) the

>    debtor's one asset is the subject of a foreclosure action
>    as a result of arrearages or default on the debt; (4)
>    the debtor's financial condition is, in essence, a two
>    party dispute between the debtor and secured creditors
>    which can be resolved in the pending state foreclosure
>    action; (5) the timing of the debtor's filing evidences
>    an intent to delay or frustrate the legitimate efforts
>    of the debtor's secured creditors to enforce their
>    rights; (6) the debtor has little or no cash flow; (7)
>    the debtor can't meet current expenses including the
>    payment of personal property and real estate taxes; and
>    (8) the debtor has no employees.

C-TC, 113 F.3d at 1311. While the C-TC factors structure the bad-faith analysis, a court must evaluate the totality of the circumstances and avoid applying the factors mechanically. Cohoes, 931 F.2d at 227; see also In re 68 W. 127 St., LLC, 285 B.R. 838, 844 (Bankr. S.D.N.Y. 2002).

In this case, the bankruptcy court addressed each C-TC factor, grounded its analysis in factual findings amply supported by the record, and reasonably concluded that Ms. Fuschi initiated the instant case in bad faith. Addressing the first two factors, the court observed that "the only meaningful asset the Debtor possesses is the apartment that's of issue," "the amount outstanding on the secured debt is well in excess of $1 million," and the "unsecured creditors are few, if any, and they've largely been taken care of through the Connecticut proceeding." Tr. of 12/21/2021 Hr'g at 45:13-15, 45:19-22. The court noted that the third factor -- the existence of a foreclosure action -- "extends to the nonjudicial foreclosure context" present here, and further explained, under

the fourth factor, that this case "is a two-party dispute regarding the fate of the apartment." Id. at 46:4-5, 46:13-14. Turning to the fifth factor -- the timing of Ms. Fuschi's filing -- the court emphasized that "the filing occurred on the day after entry of an order in the Connecticut Court … lifting the stay to authorize pursuit of foreclosure remedies," and thus concluded that it "appears that the filing … was driven by an intent to further delay or frustrate legitimate efforts of the secured creditor to enforce their rights." Id. at 46:20-23, 47:3-6. The court acknowledged that the sixth and seventh factors were not necessarily satisfied because Ms. Fuschi has some cashflow and could partially meet current expenses; but, "given the magnitude of the arrearages at issue here," the court did not find that these factors weighed strongly in her favor. Id. at 47:7-48:2. Finally, the court briefly mentioned the final factor by stating that Ms. Fuschi had no employees. Id. at 48:3-4.

In addition to its analysis of the factors, the bankruptcy court addressed the broader perspective, stating that Ms. Fuschi's petition presented "essentially, a two-party dispute between the Debtor and her secured creditors, with respect to the apartment … that can totally and effectively be resolved in proceedings elsewhere." Id. at 48:14-17. Given this perspective, the bankruptcy court concluded that "the timing of the filing" thus "evidences an attempt to delay or frustrate legitimate efforts [by

10

BNY Mellon] to enforce their rights" after the Connecticut court had already "bent over backwards … to give Ms. Fuschi every opportunity to have a successful bankruptcy process there … that would result in her being able to keep her home." Id. at 48:20-49:3. Based on the bankruptcy court's careful attention to the C-TC factors and thoughtful consideration of the case's context, the Court finds no abuse of discretion in the § 1112(b) dismissal below.

Ms. Fuschi appears to counter the bankruptcy court's bad-faith determination by asserting that she intended to reorganize and thus did not file in bad faith. She contends that she "is in a position to properly organize" and, in support of that position, she attaches to her brief an "Amended Plan of Reorganization" that she earlier submitted in the Connecticut case. ECF No. 8 at 6, 19-23. But her subjective beliefs about her own financial situation do not undermine the factual findings of the bankruptcy court that support a finding of bad faith. In other words, the bankruptcy court was not required to credit her unsupported assertions over objective evidence in the record connoting bad faith.

Moreover, the purported "Amended Plan" submitted by Ms. Fuschi is the same plan earlier rejected by the Connecticut court for failing to meet the requirements of a Chapter 11 reorganization plan. See Chapter 7 Order. Now, years later, Ms. Fuschi still has not demonstrated how she could repay her significant debt through

11

MasterClass21 (her "performance and teaching program") or identified what steps she has taken to subdivide her apartment. ECF No. 8, Ex. 5 at 21; see also Tr. of July 16, 2019 Hr'g at 5:23-9:10, In re Olegna Fuschi-Aibel, No. 18-50052 (Bankr. D. Conn. Oct. 11, 2019), ECF No. 133. Her reproduction of an out-of-date, already rejected plan of reorganization does not undercut the bankruptcy court's well-supported finding of bad faith.

The bankruptcy court also cited the single-estate rule in support of its dismissal of Ms. Fuschi's case. Although "[t]here is a decided difference of opinion over whether a debtor may ever simultaneously maintain two separate bankruptcy proceedings," the "majority view" finds "a strict prohibition against ever having two cases open simultaneously." In re Turner, 207 B.R. 373, 378 (B.A.P. 2d Cir. 1997); see also In re Truong, No. 09-11047, 2009 WL 2929261, at *5 (Bankr. S.D.N.Y. Sept. 3, 2009) ("[C]ase law indicates that the Debtor may not maintain two pending bankruptcies at the same time in these circumstances pursuant to the 'single-estate' rule."); In re Shankman, 382 B.R. 591, 595 (Bankr. E.D.N.Y. 2008) ("[T]he majority of course, including courts in this district, have held that a debtor may only have one case pending at any given time."). And while some courts have "declined to adopt a per se rule against such filings," there is "universal agreement" that filing a second petition "before receiving a discharge in the original … case" renders the second petition "a nullity." In re

12

Turner, 207 B.R. at 378; see also In re McMahan, 481 B.R. 901, 913 (Bankr. S.D. Tex. 2012). The Supreme Court has recognized this point: "[T]he pendency of the first application preclude[s] a consideration of the second in respect of the same debts." Freshman v. Atkins, 269 U.S. 121, 122 (1925).

Ms. Fuschi filed the Chapter 11 petition in the bankruptcy court in the Southern District of New York before she had been discharged from the Chapter 7 proceeding in the District of Connecticut. (Appellee also moved to dismiss this case before the Connecticut court granted a discharge.) Ms. Fuschi argues that the "case ha[d] been effectively closed," because "the Chapter 7 Trustee had submitted a report that the estate had been fully administered," but she cites no support for this proposition, which runs counter to the authorities just cited. ECF No. 8 at 4.

Finally, the bankruptcy court did not abuse its discretion in imposing a two-year filing bar on Ms. Fuschi. See In re Casse, 198 F.3d 327, 341-42 (2d Cir. 1999); In re Wenegieme, No. 17-cv-2100, 2018 WL 9536800, at *4 (S.D.N.Y. Jan. 9, 2018). The court justified this limitation with reference to its finding of bad faith; it feared that "failing to do so … would leave in place significant risk that Ms. Fuschi would … file an additional proceeding in an attempt to trigger the automatic stay, and further delay the legitimate enforcement efforts of the secured lender." Tr. of 12/21/2021 Hr'g at 49:23-50:2. The two-year period was calibrated

13

to provide a "sufficiently long period to ensure that the apartment foreclosure process can go forward successfully." Id. at 50:9-10. The Court finds that the bankruptcy court's imposition of the two-year refiling bar is reasonably tied to preventing the kind of bad-faith filing that justified dismissal here.

## IV. Conclusion

For the foregoing reasons, the Court affirms the order of the bankruptcy court. The Clerk of the Court is hereby directed to close the case.

SO ORDERED.

New York, NY
September 27, 2024

_____
JED S. RAKOFF, U.S.D.J.